THE PORT ROYAL AND WESTERN CAROLINA RAILWAY COMPANY v. PHINIZY.

1. That section 708 of the code may be submitted to the jury when stock is killed at some distance beyond a public crossing, was de-

cided in 65 *Ga.* 631. The like rule applies where stock is killed between the blow-post and the crossing, and sections 708 and 710 are to be construed together.

2. It is not negligence, affirmative or negative, for a locomotive engineer to blow the stock alarm whistle in a town or city, to frighten an animal from the track in case of a sudden emergency, more especially where the scene of the occurrence, though within the corporate limits, is not in a populous quarter, but in the woods or fields adjacent to the city proper.

April 29, 1889.

Railroads. Negligence. Charge of court. Before Judge EVE. City court of Richmond county. May term, 1888.

Thomas B. Phinizy recovered a verdict for $165 damages against the railroad company for killing a mule by one of its trains. It appeared that the animal (testified to be worth $160 to $175) escaped or was taken from the plaintiff's pasture at night and went about eleven miles to or just inside the city limits of Augusta, where the train struck it on a trestle and killed it, about four to four and a half o'clock in the morning. There was a good fence around the pasture; there were other mules therein, and none of them disappeared. The trestle was between a public crossing over the track and the blow-post, which was about 400 yards from the crossing and 220 yards from the trestle. The track was somewhat curved, and was on a down-grade in the direction the train was moving, but the view from the blow-post to the trestle was unobstructed, and the whole distance could probably have been seen in daylight. The engineer of the train testified, however, that he could see only about 30 or 35 yards ahead with the engine's headlight, which was a good one; that he blew the whistle at the blow-post, and then saw the mule on the track about 25 or 30 yards ahead; that the train was nearly half the distance from the post to the trestle (in one place he says about sixty yards from

v 83-13

the trestle); that he blew on brakes, and these were applied, the engine was reversed, the bell was rung, and the "cattle alarm" was blown to make the mule leave the track, as required by the company's rule; that everything possible was done to stop the train, which had twelve freight and two passenger coaches; that the mule left the track once and then got on it again, tried to cross the trestle, became fastened thereon, and was struck by the engine, which moved twenty or twenty-five feet further and stopped; that it was moving about three or four miles an hour when it struck the mule; and that it required a distance of about 125 yards to stop this train at that place. The fireman of the engine, the conductor of the train and two train-hands gave testimony tending, in certain particulars, to corroborate the engineer. A witness for the plaintiff, who lived in a house near the railroad, testified that he heard the whistle blow when the train was near his garden, which was about 270 feet from the blow-post; that after this the cattle signal was blown; and that, from examination of mule-tracks found about the track and near the trestle, it appeared that the animal had run both up and down the track.

The case came to this court on exception to the overruling of the defendant's motion for a new trial, the grounds of which are as follows:

(1–2) The verdict is contrary to law and evidence.

(3) The court erroneously charged the jury touching acts of alleged negligence of the defendant which were not the proximate cause of the damage and did not, under the evidence, contribute thereto, by charging section 708 and the substance of section 710 of the code, and then stating that he had read these sections at the request of the plaintiff's counsel.

(4) The court added this charge: "While the doing of the act prohibited cannot be claimed as diligence,

but is to be taken as negligence if the act resulted in damage here claimed, but if the damage did not result from the act, though it be an unlawful act, it would not imply negligence." The error is, the clear implication that the prohibited act, *i. e.* the blowing of the whistle, might have caused the damage, the evidence showing that this act was done to prevent the injury; also the implication that the blowing of the whistle was an act of negligence under the circumstances, that might be excused but not justified in the eyes of the law.

J. GANAHL, for plaintiff in error.

WM. K. MILLER and J. H. PHINIZY, *contra.*

BLECKLEY, Chief Justice.

A mule was killed by the railway company within the corporate limits of Augusta, but some three miles distant from the central portion of the city. The scene of the occurrence was upon territory added by a late amendment to the city charter. The animal was killed upon a trestle, between the blow-post and a public crossing, probably 150 yards from the crossing.

1. It is objected that the court gave in charge to the jury sections 708 and 710 of the code. According to the principle ruled in · *Western & Atlantic Railroad* v. *Jones,* 65 *Ga.* 631, there was no error in this part of the charge. The two sections are to be taken together. If they are pertinent when stock are beyond the crossing, we can see no reason why they are not so when the stock are on the hither side of the crossing. The sections, and the conduct of the company's employés under them, are simply for consideration by the jury. Their importance is nothing like the same when the injury occurs at a distance from the public crossing, as when it occurs upon the crossing. Still, they have some relevancy in either case.

2. But we think the court erred in deciding as mat-

ter of law, that it was negligent to blow the stock-alarm whistle. Section 710, as modified by the act of 1875, contains no express inhibition upon blowing the whistle within the corporate limits of a town or city. Ringing the bell is substituted for whistling, as to all matters of notice or warning in approaching public crossings; but in this instance, the blowing of the stock-alarm had no relation to the crossing, but was aimed alone at the mule, and was prompted by the emergency. We can see no reason why, in case of a sudden emergency, the whistle may not be sounded, even in the very centre of a town or city, when such measure is requisite to save the life of man or beast, and we are sure that the statute never contemplated any inhibition upon such use of the whistle where danger occurs in the woods or fields adjacent to the populated quarters of a city. The merits of the present case on the facts in evidence are so close that we think the erroneous charge to the jury may have done mischief, and therefore that a new trial should be granted.

*Judgment reversed.*